IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION
_____

| | | |
|---|---|---|
| LEONARD L. ROBERTS, | ) | Cause No. CV 10-146-M-DWM-JCL |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| WARDEN SAM LAW; | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF MONTANA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

On December 27, 2010, Petitioner Leonard Roberts filed this action for a writ of habeas corpus under 28 U.S.C. § 2254. Roberts is a state prisoner proceeding pro se.

On January 3, 2011, Roberts was ordered to show cause why his petition should not be dismissed with prejudice as time-barred and procedurally defaulted. He responded on January 28, 2011.

## I. Background

In the early morning hours of October 2, 2005, Roberts was pulled over by a

Stevensville police officer for driving without headlights on a city street. A breath test indicated his blood-alcohol content was 0.258. Roberts was on probation at the time, in Ravalli County Cause No. DC 02-173, for a felony conviction for driving under the influence of alcohol.

Roberts was charged under Ravalli County Cause No. DC 05-173 with two felonies, DUI – his eleventh offense and third felony – and criminal endangerment, as well as two misdemeanors, driving with a suspended license and operating a vehicle with expired registration. He pled guilty to all four charges, but, he claims, his attorney promised to return to court to obtain dismissal of the criminal endangerment charge when Roberts began serving the sentence. Pet. (doc. 1) at 2-3 ¶¶ 1-3, 5; Br. in Supp. (doc. 2) at 8. On April 25, 2006, in Cause No. DC 05-173, he was sentenced to serve five years on the DUI charge and ten on the criminal endangerment charge, all suspended, to run consecutive to each other and to his probation revocation in Cause No. DC 02-173. Pet. at 2 ¶ 4; Judgment (doc. 2-5) at 3, 8. He did not pursue a direct appeal or file a timely petition for postconviction relief in Cause No. DC 05-173. Pet. at 3 ¶¶ 8,[1] 11.

On December 17, 2008, Roberts discharged the revocation sentence in Cause

---

[1] Roberts says he appealed but lists the cause number as "OP 10-0344," which is the state habeas proceeding described below.

No. DC 02-173 and commenced serving the sentence in Cause No. DC 05-173 under the conditions set by the trial court.  <u>See</u> Judgment at 4-7.[2]  About four months later, the State petitioned to revoke his suspended sentences because Roberts submitted an adulterated urine sample and admitted drinking.  The petition was granted, Roberts's probation was revoked, and, on July 9, 2009, he was sentenced to serve 15 years in the custody of the Department of Corrections with no time suspended.

Roberts appealed the revocation.  He asserted that, under Mont. Code Ann. § 46-18-201(3)(a)(iv)(A) (2009), all but the first five years of his revocation sentence should have been suspended, and that the revocation was improperly based on his use of marijuana.  <u>State v. Roberts</u>, 233 P.3d 324, 326 ¶ 8, 327 ¶ 15 (Mont. 2010).  On May 18, 2010, the Montana Supreme Court rejected his claims and affirmed the revocation.  <u>Id.</u> at 327 ¶ 20.

On July 16, 2010, acting pro se, Roberts filed a petition for writ of habeas corpus in the Montana Supreme Court, claiming he was subjected to double jeopardy, he should not have been charged with criminal endangerment, and his counsel advised him to sign an illegal plea agreement.  On August 31, 2010, the Montana Supreme

---

[2]    The trial court's judgment said the sentence in DC 02-173 would be discharged on December 7, 2008.  The Montana Supreme Court's opinions in Roberts's cases say the sentence was discharged ten days later, on December 17, 2008.  The later date, December 17, is assumed to be correct as it is more favorable to Roberts.

Court denied his petition because, under state law, "habeas is not available to attack the legality of an order revoking a suspended or deferred sentence," and because Roberts was "attacking his convictions and sentences."  Order at 2, Roberts v. Law, No. OP 10-0344 (Mont. Aug. 31, 2010).  Roberts's petition for rehearing was denied on October 12, 2010.  Order at 1, Roberts, No. OP 10-0344.

Roberts states that he "sent out" a petition for postconviction relief on November 16, 2010.  Pet. at 5 ¶ 16.  The records of the Twenty-First Judicial District Court do not show any recent filing from him in a new civil case or in any of his several criminal cases.  Though he was advised of this fact, Order to Show Cause (doc. 6) at 4, Roberts has not shown otherwise.

Roberts filed his federal petition on December 23, 2010.[3]

## II. Roberts's Allegations

First, Roberts claims he was sentenced twice for the same crime because, under the circumstances of the case, DUI and criminal endangerment were the same offense. Pet. at 4 ¶ 15A; Mem. (doc. 2) at 4-5 (citing United States v. Dixon, 509 U.S. 688 (1993)).

Second, Roberts claims the Montana Supreme Court "had previously ruled in

_____

[3]  Roberts signed his federal petition on November 1, 2010, Pet. at 7, but he did not mail it on that date.

4

2006 that it was unconstitutional and illegal to charge DUI and criminal endangerment where there was no endangerment committed."  Pet. at 4-5 ¶ 15B; Mem. at 6-7.

Third, Roberts claims counsel was ineffective because he misled Roberts to sign "an illegal plea agreement under false promise."  Pet. at 8 ¶ 15C; Mem. at 10.  He explains:

> Mr. Roberts defense attorney, on his own reference to a supreme court ruling which made it illegal to add criminal endangerment to a DUI, when there is no endangerment, came to him stating that if Roberts would sign this plea agreement now that he, the defense attorney, would take this case back to court after Roberts started serving this new sentence and have the 10 years for the endangerment dismissed as he stated that he and the state or the court knew that the endangerment sentence was illegal.
>
> Mr. Roberts agreed to sign the plea agreement only after he and Mr. Stevenson, the defense attorney, shook hands to bind the agreement that the attorney would get the 10 years dismissed or dropped as promised.

Mem. at 8.

In his Memorandum, Roberts appears to add a claim that counsel was ineffective for failing to raise his first three claims in a direct appeal.  Mem. at 11.

### III. Analysis

Roberts's claims concern the legitimacy of his conviction and the effectiveness of his attorney at trial and on direct appeal.  Pet. at 7-25.  His claims are untimely.

Roberts had to file his federal habeas petition within one year of the date his

conviction became final.  28 U.S.C. § 2244(d)(1)(A); <u>Bowen v. Roe</u>, 188 F.3d 1157, 1159 (9th Cir. 1999).  That occurred on June 26, 2006, sixty days after written judgment was entered.  Mont. R. App. P. 4(5)(b)(i).  Roberts should have filed his federal petition or before June 26, 2007.  He filed on December 23, 2010, three and a half years too late.

Roberts was given an opportunity to show cause why his federal petition should not be dismissed with prejudice as time-barred.  He responds that he could not have known that his attorney "had no intention of going back to court" to obtain dismissal of the criminal endangerment charge until he began serving that sentence and his attorney did not do anything to get the charge dismissed.  Resp. to Order (doc. 9) at 4.

Roberts started serving his new sentence on December 17, 2008.  He had until December 17, 2009, to file the claim alleging a false promise by counsel.  Even allowing for a certain period of doubt, when it was not known whether counsel would file the promised motion or not, Roberts certainly knew everything he needed to know when his previously suspended sentence was revoked and he was sentenced to prison time for criminal endangerment on July 9, 2009.  Taking that date as the initiation of the federal limitations period, 28 U.S.C. § 2244(d)(1)(D), he should have filed his federal habeas petition on or before July 9, 2010.  Instead, he filed a state habeas

6

petition on July 16, 2010, one week after the federal limitations period had already expired.

Even if one assumes that the prison mailbox rule applies[4] and that Roberts mailed his state habeas petition the same day he signed it, then he filed it on June 29, 2010, Pet. for Writ of Habeas Corpus at 4, <u>Roberts v. Law</u>, No. OP 10-0344 (Mont. July 16, 2010), when ten days remained in the federal limitations period. The Montana Supreme Court denied rehearing on October 12, 2010. Roberts did not file his federal habeas petition until December 23, 2010, significantly more than ten days after the Montana Supreme Court denied rehearing.

Though Roberts says he submitted a petition for postconviction relief on November 18, 2010, Resp. to Order at 2, that date, too, is more than ten days after the Montana Supreme Court's denial of rehearing. Further, the mail log on which Roberts relies does not show that he mailed a postconviction petition to the trial court. None of the outgoing or incoming legal mail logged between October 5, 2010, and January 12, 2011, was addressed to or from the Twenty-First Judicial District Court in Hamilton, Montana. There is an entry on December 22, 2010, for "Clerk of District Court," but the city is listed as Missoula, not Hamilton, the zip code is this Court's,

---

[4] <u>See</u> <u>Smith v. Duncan</u>, 297 F.3d 809, 814-15 (9th Cir. 2002), <u>abrogated on other grounds by</u> <u>Pace v. DiGuglielmo</u>, 545 U.S. 408, 414 (2005).

and this Court received mail from Roberts on December 23, 2010.  Roberts sent legal

mail to the Ravalli County Attorney and the Attorney General on November 18, 2010,

but not to the trial court.  Mail Log (doc. 9-1 at 18).

Roberts also states that he filed a state habeas petition in November 2009, but

the mail log, again, contradicts his claim.  It shows that, between November 30, 2009,

and March 8, 2010, outgoing legal mail was directed to the Montana Attorney

General; the Department of Corrections; George H. Corn, the Ravalli County

Attorney; Robin Meguire, Roberts's appellate defender; and the Office of the

Appellate Defender.  Outgoing legal mail directed to the Clerk of the Montana

Supreme Court was sent out on March 12, 2010, and something from that office came

in on March 17, 2010.  Mail Log (doc. 9-1 at 19).  The records of the Montana

Supreme Court show that Roberts filed one habeas petition, numbered OP 10-0344,

and no other.  There is no indication that Roberts actually filed a habeas petition in

any court in the fall of 2009.  Yet, even if those five days between March 12 and 17

were tolled, Roberts's federal petition would still be untimely by more than two

months.

Roberts's federal petition is time-barred.  For what it may be worth to Roberts,

his belief that the State must show an identifiable victim in order to convict someone

of criminal endangerment appears to be mistaken.  See, e.g., State v. Bell, 923 P.2d

8

524, 526 (Mont. 1996) (noting statute's reference to tree-spiking and holding that State is not required to prove an identifiable victim was endangered, only that defendant knowingly created a substantial risk of death or serious bodily injury to another).  His belief that a defendant cannot be convicted of both DUI and criminal endangerment based on one incident also appears to be incorrect.  Cf. State v. Schauf, 216 P.3d 740, 745 ¶ 20 (Mont. 2009) (holding that proof of DUI is not an element of criminal endangerment).  While it is possible he would not have pled guilty had he known the endangerment conviction would be valid, his convictions are consistent with the statutes and case law of the State of Montana, and the facts of the case were sufficient to support his conviction of both offenses.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254 Proceedings.  A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c).  Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Lambright v. Stewart, 220 F.3d 1022, 1026 (9th Cir. 2000) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Setting aside the doubtful merit of Roberts's claims, the Court has entertained every conceivable circumstance that might make his petition timely.  It simply cannot be made timely.  Reasonable jurists could not debate the procedural ruling.  There is no reason to encourage further proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  A COA is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.  The Petition (doc. 1) should be DISMISSED WITH PREJUDICE as time-barred.

2.  The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3.  A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject,

or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Petitioner must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."  Failure to do so may result in dismissal of his case without notice to him.

DATED this 8th day of February, 2011.


   /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge